JACOB MILLER and ISAAC SHAURMAN v. CHARLES M. CLARK, impleaded with JOHN O'BRIEN, JAMES McNEVEN and others.

An owner of the legal title to land, who makes a contract with a builder, whereby the latter agrees to erect thereon a building, and the former to make advances in aid of the construction, and, when the building shall be completed, to convey it, with the land, to the builder, provided he performs certain covenants contained in the contract—the purchase money and advances to be secured by a mortgage upon the premises simultaneously with the making of the conveyance—is not the "owner," within the meaning of the "act for the better security of mechanics," &c., in the city of New York, passed July 11, 1851.

Hence, under such circumstances, a person who has furnished materials to the building, in pursuance of an agreement with the builder, and in conformity with the terms of the contract with the legal owner of the land, acquires no lien by filing the notice prescribed in the sixth section of the act, specifying the latter as the owner and the former as the contractor.

The decisions of this and of other courts in this state, upon the construction of the word "owner," as used in the lien laws of 1830, 1844 and 1851, reviewed. (See note *a*, p. 548.)

GENERAL TERM, DECEMBER, 1854.

ON the 30th of August, 1853, the defendant, Clark, being the owner in fee of land in the city of New York, entered into a contract with the defendants, O'Brien and McNeven, of which the provisions were as follows : 1. Clark covenants to sell to them the land, at the price of $4,500, with interest, payable half yearly, from November 1st, 1853 ; and 2. To lend them, in aid of the construction by them of three buildings upon the land, $4,500, payable in instalments during the course of the erection, provided, however, the materials and workmanship shall prove, during the progress of the buildings, equal to those in a pattern house ; each instalment to bear interest from the day of payment. 3. All taxes and assessments now existing upon the land, to be paid by Clark. 4. The interest which shall have accrued, with any premium of insurance, tax or assessment, hereafter becoming a lien upon the premises, to be retained by Clark out of the last instalment of the loan. 5. O'Brien and McNeven covenant to erect upon the land three buildings, of a prescribed style, to be completed on the first day of January, 1854, in accordance with law and with the regulations of the fire department; and, upon notice, remove any lien that may be effected upon their interest in the premises, or that can affect the land under the lien law of this state, and cause any proceeding taken under that act to be discharged. 6. In default of a full performance of the covenants last above mentioned, the whole contract, at the option of Clark, to " cease and determine," and he " to have the right to sell all the right, title and interest of O'Brien and McNeven in the premises, under this contract, at public auction," giving them ten days' notice thereof, " and the surplus, after paying Clark, to be paid to them." 7. They are to insure the buildings, when enclosed, in a satisfactory company, for a reasonable amount, and assign the policies to him as security ; in de-

fault whereof, Clark to insure and charge the premium to them. 8. When the ·buildings are completed, Clark to convey them and the land, in fee simple, to O'Brien and McNeven, by a warranty deed, they at the same time executing to him three bonds, with mortgages upon the premises, "in which their wives shall unite," the same to be for $3,000 each, payable within three years, with interest semiannually, and containing "the usual thirty days interest and insurance clauses."

The erection of the buildings was proceeded with by O'Brien and McNeven. On the ninth of November, 1853, they received the fourth of the nine instalments provided for. On the 16th and 17th of the same month, the plaintiff, in pursuance of an agreement with them, and in conformity with the terms of their contract with Clark, furnished lumber to the buildings. On the 16th, O'Brien and McNeven being insolvent, executed to the defendants, John W. Miller and Daniel Crane, a voluntary assignment for the benefit of creditors.

On the 18th, two days subsequently, the plaintiff filed a notice, pursuant to the sixth section of the "act for the better security of mechanics," &c., passed July 11, 1851, specifying Clark as the owner, and O'Brien and McNeven, and their assignees, as the persons against whom the claim was made; and afterwards proceedings were taken in the Sixth District Court to bring the supposed lien to a close. It was claimed, that at the time the notice was filed, the work upon the buildings had progressed so far and was of such quality as to render the fifth instalment due and payable. This was denied. Judgment was given in favor of the plaintiff, from which the defendant, Clark, appealed to this court.

It appeared that afterwards, on the first day of December, 1853, without availing himself of the right to sell at auction, the defendant, Clark, entered into a contract with the assignees, to convey the premises to them, for their own personal use, and that they proceeded with the erection of the buildings on their own account.

*Augustus E. King,* for the defendant, Clark, urged, among other arguments, the following:

The contract between Clark, and O'Brien and McNeven, was for the sale of the lots in question, and by it money was to be advanced only as a loan. It was not such a contract as is contemplated by the act commonly known as the lien law of July 11, 1851. The appellant was not erecting a house or houses on the premises. He was, it is true, owner in fee of the land, but he never had the slightest ownership in the houses erected thereon, except by the possibility of their reverting to him on non-compliance with the contract, and even then the contract provided that he might sell the property at auction, so that he was virtually dispossessed of all ownership in the property. And as matter of fact, since the appeal in this action was taken, the appellant has, in consequence of such dispossession, conveyed the property in fee under a contract with the assignees of the contractors for $5,000, being $475 less than the price agreed upon for the lots and the money actually advanced by him up to and including the said ninth day of November. He was not, in any sense, contemplated by the statute an " owner."

*John M. Cooper* and *John B. Scoles,* for the plaintiffs, argued the following points:

I. It makes no possible difference as to Clark's liability, whether the materials are to be considered as furnished to *him* through O'Brien and McNeven as his agents, or furnished to *them* as contractors; in either case he is equally liable.

II. It is not pretended that Clark should have notified the " *material men.*" We do say that he was bound to object to the boards when he saw them on the ground, and knew that they were to be used in the roofing of the houses by the contractors. If he was dissatisfied with them, of course the objection could be made to the *contractors.* By remaining silent and suffering the materials to be used in the houses,

Miller *v.* Clark.

he assented to their use and *accepted* the materials. This is the well established legal rule.

III. Parties cannot evade the lien law by such a contract as this. Until the land is conveyed by deed executed, the fee continues in the owner, and he is in law as in reality the owner of the houses which are being erected upon his land. If the contractors should never become entitled to a conveyance by the terms of the contract, the land and the houses are alike the property of the owner of the land. If the contractors become entitled to a conveyance, and get one, even then they do not obtain an entire seisin of the land, for they have immediately to execute a mortgage upon the property for the purchase money. That, under such circumstances, the contractors do not obtain an entire seisin of the land, has been clearly settled by adjudication. The wife, for this reason, is not dowable against the mortgage. (4 *Kent's Commentaries*, p. 39.) The houses, then, are going up on the owner's land, for the owner's benefit, and the lien of the material man attaches.

IV. Calling the payment a "loan" does not alter the fact, nor vary the rule of law. O'Brien and McNeven become entitled to their payment when their work and materials are received without objections, even though inferior to what the contract calls for, subject to deduction under circumstances of proof of deficiency, &c. Otherwise, see the absurd conclusion that follows. The contractor furnishes labor and material, the owner of the land stands by, inspects and makes no objection, and after having thus received the benefit of the contractor's labor and materials, refuses to pay anything for them, alleging that they are inferior to what the contract calls for, and so the owner is to have his houses built for *nothing*, because they are not equal in materials or workmanship to the pattern house. This position, absurd upon its face, is the one seriously contended for on the other side. The true doctrine is laid in *Hollingshead* v. *Macher*, 13 *Wend.* 276, and *Norress* v. *Windsor*, 3 Fairf., 293.

We will quote the language of the authority from note in

*Chitty on Contracts*, p. 451 : " Where one has interest into a special agreement to perform work for another and furnish materials, and the work is done, and the materials furnished, but *not in the manner stipulated in the contract*, yet if the materials are of *any value or benefit* to the other party, he is answerable to the amount whereby benefitted."

This is the rule of law, and it is equally applicable to the ordinary contract for building a house, or a special contract like the present calling for advance of money, as work is performed and materials furnished.

The defendant, Clark, was liable, first, on the ground that the hemlock boards were furnished *to him*, through O'Brien and McNeven, as his agents ; and secondly, on the ground that they were furnished to O'Brien and McNeven as contractors, Clark being the owner.

By THE COURT. DALY, J.—It was decided by this court, in *McDermott* v. *Palmer*, that an owner of land who agrees, under what is usually denominated a building contract, to advance to the builder sums of money, from time to time, to be applied towards the erection of a building on the land, and when the building is finished, to convey the land to the builder, in fee, receiving from him a mortgage for the advances made, is not the owner of the building within the meaning of the lien law.   Our decision in that case (which was made when the decisions of the Common Pleas were subject to review in the Supreme Court) was reversed by that court ; (11 Barbour, 9 ;) but this court having made the same decision in *Loonie* v. *Hogan*, an appeal was taken to the Court of Appeals, and the decision of this court sustained.   (See 6 Selden's notes of cases in Court of Appeals, April, 1854, p. 42. (*a*)   That case arose under the act of 1830, and in

---

(*a*) NOTE BY REPORTER.—It is manifest, from the opinions of the court in this case and in *Walker* v. *Paine, post*, that the Common Pleas coincide in the view of the decision of the Supreme Court in *McDermott* v. *Palmer*, which is intimated in a note to *Kennedy* v. *Paine*, 1 E. D. Smith, 652.   That note states, that the decision of the Common Pleas in *Loonie* v. *Hogan*—affirmed in the Court of Appeals—is

*Gay* v. *Brown*, (1 E. D. Smith, 725,) the same construction was given to the act of 1851, under which the present case

---

adverse to that of the Supreme Court of this district, in *McDermott* v. *Palmer*. The correctness of this statement is called in question at page 101 of the valuable treatise, recently published by Mr. CHARLES C. NOTT, on the lien laws of this state. In that work, the doctrine is declared "settled beyond a doubt," that the "*vendee* is the owner," in contemplation of these statutes, where lots are "sold on a building contract, *or a contract by which the vendor agrees at a future time to convey*, and in the meanwhile puts the vendee in possession, and authorizes him to erect buildings." It is true, that this "was early decided by the Common Pleas, in the case of *Loonie* v. *Hogan*," and sanctioned by the Court of Appeals in affirming that decision; but, unless wide misapprehension exists, the same principle was much earlier determined by the Common Pleas, in the very case of *McDermott* v. *Palmer*. That case originated in this court, where the plaintiff suffered judgment of nonsuit, on the ground that the defendant was not an "owner," under the "act for the better security of mechanics," &c., passed in 1830, amended in 1832. The case of *Loonie* v. *Hogan* arose under the same statute, and not, as the learned editor of the above treatise supposes, under that of 1844.

The act of 1830 differed from the subsequent statutes of 1844 and 1851, in this respect, namely: The former gave to the laborer or material man, to whom the contractor should be indebted, the right to bring a *personal action* against the owner, to recover the amount of such indebtedness, to the extent of any balance due by the owner to the contractor. The later acts provide, that the laborer or material man *shall have a lien* for his work or materials, upon the building and upon the land, to the extent of the right, title and interest of the owner existing at the time the notice of claim is filed. (Laws of 1830, chap. 330, p. 412, and of 1832, chap. 120, p. 181; Laws of 1844, chap. 220, p. 339; Laws of 1851, chap. 513, p. 953, and of 1855, chap. 404, p. 760.)

The lien given by the act of 1851 is, however, further restricted—under the established decisions of this court—as well to the amount due from the owner to the contractor, as to the amount due from the contractor to the claimant, upon the building contract. (See *Doughty* v. *Devlin*, 1 E. D. Smith, 625, and numerous cases subsequently decided. See, also, the decision of the Court of Appeals, affirming this court, in *Carman* v. *McIncrow*, 3 Kernan, 70, and republished at the end of this volume.)

Thus, while the provisions of the acts of 1830, 1844 and 1851, are widely dissimilar, all—as judicially construed—embody the same principle, to wit, that the claimant may attach, in the hands of the owner, moneys, which, although legally due from the owner to the contractor, belong in equity to the claimant. The several statutes differ only as to the *remedy*. The first provided for the enforcement of the claim by an action, *in personam*, against the owner. The others insure its recovery by a lien upon the owner's interest in the property benefitted by the claimant's labor or materials. The thing to be reached—

Miller *v*. Clark.

arises. This is decisive of the question of Clark's liability in this suit. There are several other grounds stated in the notice of appeal, upon which this judgment should be re-

---

attached—is identical in all the statutes, *i. e.*, the debt of the owner to the contractor.

It is, therefore, obvious, that the principle whereon rests the decision of the Common Pleas as to the construction of the term "owner," applies alike to all these statutes. And so the court have declared, in *Gay* v. *Brown*, 1 E. D. Smith, 725. Thus, although the only decision of the Court of Appeals, upon the point, arose under the act of 1830, yet, as that court has concurred with this in the leading principles which have obtained in the construction of the statute of 1851, the question may be safely pronounced settled.

But we have wandered from the main object of this note, which is to consider the case of *McDermott* v. *Palmer*, as decided in the Supreme Court, in connection with the observations made at pages 101 and 102 of Mr. Nott's treatise.

The decisions of the Common Pleas being formerly subject to review in the Supreme Court, the case of *McDermott* v. *Palmer* went up to that court on a writ of error, and the judgment was there reversed, on the ground that the defendant *was an "owner"* within the meaning of the act.

It is difficult to perceive, in what "the implied opinion of the court seems to have agreed with that of the Common Pleas." When the Supreme Court decided *McDermott* v. *Palmer*, in March, 1851, the only decision of the Common Pleas upon the point was contained in that very case. No decision in *Loonie* v. *Hogan* was made, by any court, until the succeeding June. If it had been intended by the Supreme Court to concede the general rule, while excepting the case under review from its operation, that court, in considering the first decision wherein such general rule had been announced by the Common Pleas, would not, assuredly, have left the concession to doubtful implication.

A careful examination of the cases of *Loonie* v. *Hogan*, 12 N. Y. Legal Observer, 225 ; (*a*) *Gay* v. *Brown*, 1 E. D. Smith, 725; *Belmont* v. *Smith*, 1 Duer, 675 ; and *Miller* v. *Clark*, *supra*, on the one hand, and of *McDermott* v. *Palmer*, 11 Barb. S. C. Rep. 9, on the other, will reveal no ground for a difference in principle between them.

In the latter case, the facts were as follows :

The defendant, Palmer, was in the possession, and assumed to be the owner, of thirteen lots of land. He had purchased or contracted to purchase them, in two separate parcels—one of eight lots and the other of five—from persons whose names are not disclosed.

On the 22d of October, 1844, one Weeks entered into a contract with him to do the mason work in the erection of buildings upon the lots, and one McCul-

---

(*a*) A report of this case is printed in full at the close of this volume.

versed, but the ground above stated being conclusive, it be comes unnecessary to discuss them.

Judgment reversed.

lough, also, at what time does not appear, entered into a similar contract with him, as to the carpenter work.

On the 24th of October, the eight lots were actually conveyed to Palmer, but whether or not he ever received a deed of the remaining five, is not stated.

On the 21st of December, in the same year, Weeks and McCullough, as parties of the first part, and Palmer, as party of the second part, entered into an agreement, wherein the two several contracts, for mason and carpenter work respectively, were declared void, but the same were directed to be retained for reference in regard to the matters specified in the new agreement. The parties of the first part then covenanted as follows: 1. *To purchase the thirteen houses and the appurtenances;* 2. *To pay a sum then due and payable from Palmer, on the contract for the conveyance to him of five of the lots;* 3. *To pay a sum due from Palmer, in like manner, on his purchase of the remaining eight lots;* 4. To repay Palmer moneys, which had been advanced by him to Weeks and McCullough, on the several mason and carpenter contracts now canceled; 5. To pay Palmer a further amount, being, after discharging the above sums, the balance of the purchase money of the houses and lots, as agreed upon by Palmer as seller, and Weeks and McCullough as purchasers; 6. To secure all these payments by a mortgage upon the premises, to be executed when the deed should be delivered; 7. To complete the thirteen houses in accordance with the specifications contained in the original contracts respectively, first above mentioned.

The defendant, on his part, covenanted to advance his notes to Weeks and McCullough severally, in separate sums and at different times with reference to the progress of the buildings.

Although the agreement bound Weeks and McCullough *to purchase* the houses and appurtenances; it contained, *in itself*, no covenant on the part of Palmer *to convey* the premises to them. There was, however, attached to the agreement, evidently referring thereto and intended to form a part of it, a memorandum, signed by Palmer, wherein it was agreed by him that a deed of the property should be given when the several obligations of the parties to the agreement were fulfilled. The late Mr. Justice EDWARDS, in delivering the opinion of the Supreme Court in the case, remarked, "We think that, although there is no covenant to convey, in the agreement itself, still, that this memorandum, when taken in connection with the agreement to which it is attached and of which it was evidently intended to form a part, would create a binding contract to convey, upon which an action might be sustained or which might be enforced in equity. *Coles* v. *Tricothick,* 9 Ves. jun. 250; *Shippey* v. *Dennison,* 5 Esp. 190; *Barry* v. *Coombe,* 1 Peters, 640; *Laythoarp* v. *Bryant,* 2 Bing. N. C. 735.)"

The plaintiff, McDermott, alleging that he had performed work upon the buildings, claimed a lien thereon under the act of 1830, and sought, in this action, to enforce such lien against Palmer as the "owner," the latter having

money in his hands, due to Weeks individually, under the agreement of December 21st.

The above being a full and minute statement of the facts disclosed in the opinion itself, published in 11th Barbour—with only some changes of arrangement—the decision of the Supreme Court is plainly in conflict with that of the Court of Appeals in *Loonie* v. *Hogan,* and with the decisions of the Common Pleas in that and other cases.

In each of those cases ·the contract was, substantially, as follows: A., the owner of the fee of land, agrees to sell, and B., a builder, to purchase, the land and appurtenances, for a certain sum. B. covenants to erect thereon, within a time mentioned, a building of a prescribed character; A. to make advances, during and in aid of the construction, payable in instalments, at different periods, until the completion of the building, when the purchase money and advances, with interest, are to be secured to A., by B.'s bond and by his mortgage upon the premises, and A., at the same time, is to deliver a deed conveying the fee to B. Pending the erection of the building, B. is to keep it insured and clear of incumbrances, and to forfeit his final right to a conveyance and to all compensation for his labors and expenditures, in default of fulfilling any of the covenants contained in the contract. A provision is sometimes inserted, authorizing A.—in case B. neglects to complete the building or to diligently prosecute the work thereon—to sell the right, title and interest of B., in and to the premises, and apply the proceeds to the payment of all sums due on account thereof, rendering any surplus to B.

The only ground whereon it is sought to distinguish the contract in *McDermott* v. *Palmer,* from that in each of the other cases, appears to be, that, while the former, like the latter, contains within itself an agreement, on the part of the builder, *to purchase,* here the agreement of the owner *to convey* is embodied in a separate paper attached to the main agreement. Under the construction placed by the Supreme Court itself, upon this "memorandum," it is, in legal effect, as truly and effectually a part of the contract, as it would have been if written within it. Both must be construed together.

True, there is here "a distinct building contract." So there is in the other cases. True, also, the builder, here, has only "a right to *enforce* a conveyance after the obligations are fulfilled." What more had he in any of the cases? Undoubtedly, in this case "the (Supreme) Court considered the building erected for the owner of the premises, to be sold *by him* when *finished.*" But is that any more true in this case than in the others? Under none of the contracts can the builder claim his deed, except upon condition that all his covenants are performed. In default of such performance, the owner of the fee retains the buildings, which have become a part of his realty; and the builder forfeits whatever of labor or money he may have contributed in the hope of ultimate absolute ownership. See *Walker* v. *Paine, post,* July General Term, 1856, where the agreement to convey was by parol, and therefore not binding under the statute of frauds. As, however, the contractor, with the owner's assent, proceeded to build upon the faith of it—both intending to carry out the agree-

ment—the court held, that a third party, claiming for materials furnished to the building, could not come in, pronounce the agreement void, and charge the owner of the lot as the owner of the building.

If, by "sold," is meant conveyed in fee, then in none of the cases were the buildings to be sold "until *finished.*" If, however, the word be used to signify an agreement to convey, then, in this case, as in the others, the houses were sold to the builder in advance of their erection.

If we "consider this contract to convey as made with some other person than the builder," it might, undoubtedly, *provided such contract stood alone,* be "evident that the buildings were erected by the owner, and for his own benefit"—unless, indeed, it appeared, on the contrary, that they were in fact erected *by the purchaser,* and for *his* own benefit—" and that the builder occupied the position of any third party, agreeing to purchase when the owner should have them completed."

Admit force in this suggestion. Wherein does it apply to *McDermott* v. *Palmer,* if not to the other cases?

Mr. Justice EDWARDS remarked, "If the building contract stood by itself, there could be no doubt as to the relations between the parties, and certainly these relations cannot be changed by incorporating the contract into an agreement for the sale of the premises, to be executed at a future day."

Thus, it is declared that the building contract with Palmer was *incorporated into* the annexed contract to convey. This, as appears in all the cases, was precisely what was done in each. In construing such contracts, when thus incorporated, it is held, that the builder is the "owner," within the meaning of the lien laws, although his ultimate right to receive a conveyance of the fee *is conditioned* upon his performance of certain covenants, a breach whereof, in any particular, will leave the title, legal and equitable, fixed, to both land and building, in the unchanged owner of the fee, unless, indeed, the premises be sold by the latter for the payment of charges incurred on account thereof. This is the broad principle, applying as well to *McDermott* v. *Palmer* as to the other cases above referred to. Indeed, in view of some of its circumstances, this is a stronger case for the application of the doctrine than any which the courts have been called to review. For, under the provisions of the contract here, the builders assumed the payment of money due from Palmer to the persons from whom the latter had purchased the very premises in question, and while he assumed to have the power to convey or cause a conveyance to be made, he was, himself, probably, without a deed as to part of the lots, and at all events owed for the property a debt, which he relied upon the builders to discharge.

---

* See, also, "Notes of cases decided in the Court of Appeals, April 18, 1854," No. 6, p. 42, prepared by Mr. SELDEN. The fourth volume of his regular reports—being the last as yet published by him—concludes with the decisions of October, 1853; while the first publication of his successor, Mr. KERNAN, commences with those of June, 1854. As respects this case, the hiatus is well supplied by the elaborate report in the Legal Observer, which is copied in the closing pages of this volume.